1999 ME 139

**Joseph YOUNG et al.**

v.

**Lois LIBBY, Personal Representative
of the Estate of James D. Irwin
et al.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1999.
Decided Oct. 1, 1999.

Brita J. Forssberg (orally), John R. Coon, Wright & Coon, P.A., Portland, for plaintiffs.

Martha C. Gaythwaite (orally), Michelle Allott, Friedman Babcock & Gaythwaite, Portland, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Joseph and Catherine Young appeal from a denial of their motion for judgment as a matter of law or for a new trial by the Superior Court, (Cumberland County, *Cole J.*). On appeal, they contend that no reasonable jury could have found for the defendant, Lois Libby, and that the court committed error when it refused their proposed jury instruction. They further claim that the court erred by allowing the testimony of Libby's expert witness and by excluding other evidence. We affirm the judgment.

[¶ 2] Joseph and Catherine Young initially brought this action on behalf of themselves and their minor child, Laure, against James Irwin.[1] Irwin died soon after the suit was brought, and Libby, his widow, was substituted as a party in her capacity as the personal representative of his estate. Subsequently, the trial court allowed the Youngs to add Libby as a defendant in her individual capacity. Although the complaint filed by the Youngs contained various counts, the only claim remaining for trial was the negligence claim on behalf of Laure. That claim alleges that Irwin and Libby knew or should have known about the existence of lead paint in the house they rented to the Youngs; that they failed to disclose the existence of lead paint; and that the failure to disclose caused injury to Laure.

[¶ 3] In September 1993 the Youngs and their family, including Laure then nine months old, moved into a house in Portland owned by Irwin and Libby. The house was rented to the Youngs by Irwin and Libby through a rent subsidy program, managed by the Portland Housing Authority (PHA). Because of the rent subsidy program the house had to pass an inspection by PHA. The inspection included a review of the condition of every room. The house was inspected on September 15, 1993, when the previous tenant moved out, and it did not pass inspection partly because of chipped and peeling paint in the rooms. Joseph Young and Irwin agreed that Young would make the necessary repairs. There was conflicting evidence as

---

1. The Portland Housing Authority was also named a defendant, but its motion for summary judgment was granted.

to whether the Youngs moved into the house before September 24, 1993, the date on which PHA certified that the house passed inspection and the date on which the lease was signed by the Youngs. According to the PHA inspector all of the chipped and peeling paint had been repaired by the time of the September 24 inspection.

[¶ 4] In October 1993 Laure had a routine medical examination by her pediatrician, and a blood sample was drawn. The lead level in Laure's blood was 14 micrograms per deciliter of blood which is slightly above the acceptable level of 10 micrograms per deciliter. Laure had another blood test in May 1994, and the lead level had risen to 21. At that time the pediatrician's office notified the Youngs and the Department of Health. The Director of the Portland Lead Poisoning Prevention Center did tests at the house and determined the existence of lead, but the evidence is conflicting as to the significance of the tests. The Youngs moved Laure to the home of an aunt for a brief period but moved her to another relative's home when the presence of lead was detected at the aunt's home. Periodic medical tests continued to be done on Laure, and her lead level rose to a high of 42 micrograms per deciliter of blood in August 1994.

[¶ 5] Much of the evidence at trial concerning the cause of Laure's elevated lead level in her blood and the effect of that lead level was conflicting and contradicted. Evidence was presented from which the jury could have found that the existence of lead paint in a house does not make that house a potential hazard for lead poisoning if the lead paint is covered by two coats of nonlead paint, unless the nonlead paint is peeling. There was testimony that there were at least two coats of nonlead paint on all surfaces in the house rented to the Youngs. Evidence was presented that there was no peeling or chipping paint and the paint was in satisfactory condition during the time Laure lived in the house.

There was evidence from which the jury could have inferred that Irwin and Libby knew about the potential of lead paint poisoning in the house and evidence from which the jury could have reached the opposite conclusion. Likewise, there was evidence that Laure was asymptomatic with little or no likelihood of long term effects from the elevated lead levels, and evidence that she suffered from a learning disability and moderate mental disability with a prognosis of suffering long term effects.

[¶ 6] On the special verdict form submitted to the jury it found that Irwin and Libby had not failed to disclose a hidden defect of which they had knowledge or should have known. Because of this finding the jury did not reach the next question on the verdict form which was whether the failure to disclose proximately caused injury to Laure.

## I. RULE 50 MOTION

[¶ 7] The Youngs argue that the court erred by not granting their motion for judgment as a matter of law, or in the alternative, for a new trial. "Pursuant to M.R. Civ. P. 50(b), a party seeking judgment as a matter of law after trial has the burden of establishing that the adverse jury verdict was 'clearly and manifestly wrong.'" *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 5, 724 A.2d 1248, 1250 (quoting *Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202).

[¶ 8] From the evidence presented to it, the jury was warranted in finding that there was no hidden defect because the lack of peeling paint and the two coats of nonlead paint sufficiently remedied any potential problem posed by underlying lead paint. In the alternative, the evidence was sufficient to permit the jury to find that Irwin and Libby had no knowledge of potential exposure to lead paint because of the two coats of nonlead paint and the favorable inspection reports by the

PHA inspectors. The Youngs have failed to demonstrate that the jury verdict was clearly and manifestly wrong.[2]

## II. JURY INSTRUCTIONS

██ [¶ 9] The Youngs claim that the court erred in refusing to give their proposed instruction to the jury. The Youngs requested an instruction that a landlord is required to make premises free from latent defects or hidden conditions of which the landlord knew or should have known if the danger posed to a child residing at the premises was foreseeable. Instead of the Youngs' proposed instruction, the trial court gave the following (in part):

> In this case, the Plaintiffs have claimed that ... the Defendants were negligent by failing to disclose a hidden defect.
>
> In order to return [a verdict] for such claim the Plaintiff must show that the Defendant acted negligently. And that such negligence proximately caused the Plaintiff's injuries.
>
> ....
>
> They're further required to prove the Defendant knew or should have known of the hidden defect and failed to disclose its existence....
>
> Landlords are not required to guarantee absolute safety of their premises. [Their] duty is to use ordinary, reasonable care to insure that the premises are reasonably safeguarded against all reasonably, foreseeable dangers in light of the total[ity] of the circumstances.

██ [¶ 10] The Youngs' theory, as demonstrated by their proposed instruction, is that a warning of a hidden defect to a young child is meaningless and, therefore,

the duty owed by the landlord, when the defect is one that may harm a young child, is a duty to make the premises safe from the defect.[3] Parties are not entitled to a jury instruction which does not correctly state the law. *See Michaud v. Steckino*, 390 A.2d 524, 533–534 (Me.1978) (holding that trial court did not err in refusing to give proposed instruction that was legally incorrect).

██ [¶ 11] The instruction given by the court correctly states the law in Maine that "a landlord is not liable to a tenant for personal injuries caused by a defective condition in premises under the tenant's exclusive control" unless one of the exceptions to that rule is applicable. *Nichols v. Marsden*, 483 A.2d 341, 343 (Me.1984). The exception upon which the Youngs base their original claim is that a landlord is liable when the landlord "fails to disclose the existence of a latent defect which he knows or should have known existed but which is not known to the tenant nor discoverable by him in the exercise of reasonable care." *Id.*

[¶ 12] We are not persuaded that the change in the common law as requested by the Youngs is warranted. The Youngs have not called to our attention any jurisdiction in which a court has held that a landlord's duty is to make the premises safe from lead paint or any other hidden defect when the victim is too young for a warning to be effective. Nor have the Youngs provided an articulate basis for the necessity of such a change. Furthermore, the Maine Legislature has acted in this area by creating a statutory cause of action for lead paint poisoning. *See* 22

---

**2.** The Youngs have also failed to demonstrate they were entitled to a new trial. Unless the record contains no credible evidence to support the jury verdict, the denial of a motion for a new trial must stand. *See Gammon v. Verrill*, 651 A.2d 831, 833 (Me.1994) (upholding denial of new trial motion because evidence did not compel a contrary finding by the jury).

**3.** The trial began on September 8 and concluded on September 15, 1998. Prior to trial the Youngs filed proposed jury instructions which included a negligence instruction very similar to the instruction actually given at trial. It was not until September 14, 1998, that the Youngs requested the instruction which they now contend should have been given.

M.R.S.A. §§ 1314–A–1327 (1992 and Supp. 1998). Section 1324–A makes the owner of a dwelling liable for damages as a result of lead paint poisoning when the owner has received notice from the Department of Human Services and has not "removed, replaced or securely and permanently covered" the lead-based substances within 30 days.[4] 22 M.R.S.A. § 1321(3) (Supp.1998). The action of the Legislature in providing for limited liability of landlords in lead paint poisoning cases, the lack of supporting authority from other jurisdictions, and the Youngs' failure to demonstrate the necessity for making a significant change in the law are sufficient grounds for our reluctance to do so. We conclude that the Youngs were not entitled to their requested instruction, and we further conclude that the instruction given by the court correctly stated the law.

### III. EVIDENTIARY RULINGS

[¶ 13] The Youngs also contend that the trial court erred in admitting the testimony of Dr. Blume, Libby's expert. After a lengthy voir dire of Dr. Blume, a medical doctor, out of the presence of the jury, the court found that he was qualified to testify about lead levels in the blood and the effect of elevated lead levels. Dr. Blume testified before the jury that in his opinion Laure's lead level would not significantly impact her development and that any impact would be small and unobservable. The Youngs contend that Dr. Blume's testimony was not scientifically reliable and was not admissible pursuant to M.R. Evid. 702. The Youngs ignore the fact that Dr. Blume's opinion concerned causation, a question that the jury did not reach because it found no negligence on the part of Irwin and Libby. Therefore, even if the trial court abused its discretion in admitting Dr. Blume's opinion on the effect of Laure's lead levels, an issue we do not decide, the error had no effect on the outcome of the trial and no prejudicial effect on the Youngs. *See* M.R. Civ. P. 61.

[¶ 14] The Youngs also object to Dr. Blume's testimony that lead is found in many sources, not just paint. Without objection, the same evidence was admitted through one of the Youngs' experts. Thus, an error, if any, in admitting Dr. Blume's testimony about alternative sources of lead was harmless. *See* M.R. Civ. P. 61; *see also Henriksen v. Cameron*, 622 A.2d 1135, 1144 (Me.1993) (holding that trial court's admission of hearsay document was harmless error because it was cumulative).

[¶ 15] The Youngs' final contention on appeal is wholly without merit. They argue that the trial court excluded records and reports of PHA showing violations of housing standards. In fact, all but one of the offered documents was admitted into evidence. The Youngs have failed to demonstrate that the exclusion of that one document affected their substantial rights in light of the fact that the information contained in the document was testified to by the inspector who prepared the document. *See* M.R. Civ. P. 61.

The entry is:

Judgment affirmed.

---

4. The Youngs agree that they have no cause of   action under this statute.